1-CIT•ATTY COI

FILED
DALLAS COUNTY
7/29/2016 2:10:10 PM
FELICIA PITRE
DISTRICT CLERK

Tonya Pointer

NO. **DC-16-09121**

| | | |
|---|---|---|
| WESLEY HOWARD, | § | IN THE DISTRICT COURT |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | _____ JUDICIAL DISTRICT |
| | § | |
| | § | |
| MAXUM INDEMNITY COMPANY, | § | DALLAS COUNTY, TEXAS |
| | § | |
| **Defendant.** | § | JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Wesley Howard ("Plaintiff" or "Howard") complaining of Maxum Indemnity Company (hereinafter sometimes referred to as "Defendant"), and files this Plaintiff's Original Petition. For cause of action, Plaintiff respectfully shows unto the Court and Jury, the following:

### I. PARTIES AND SERVICE

a.   Discovery is intended to be conducted under Level Two of TRCP 190.

b.   Plaintiff is an individual, a resident and citizen of the State of Texas who can be contacted in care of his undersigned counsel of record.

c.   Maxum Indemnity Company ("MAXUM") is a licensed insurance company authorized to engage in the insurance business in the State of Texas and may be served with process through its registered agent for service, Texas Department of Insurance, 333 Guadulupe, Austin, TX 78701.

EXHIBIT 3
TO MAXUM'S NOTICE OF REMOVAL

## II.  JURISDICTION AND VENUE

The Court has jurisdiction over this matter because the amount in controversy is within the jurisdictional limits of the Court. The Court has venue of this case because all or a substantial part of events giving rise to the claim took place in Dallas County, Texas.

## III.  REQUEST FOR DISCLOSURE

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, you are hereby requested to disclose, to Plaintiff, within 50 days of the service of this Request, the information or material described in Rule 194.2(a) - (k).

## IV.

## BACKGROUND FACTS

In February, 2013, Plaintiff was working in the oil fields for Baker Hughes running coiled tubing in horizontal wells. An ice storm hit the well site while Plaintiff was working so that running water could not be used in operations. Therefore operations were shut down.

Plaintiff's crew was ordered to go to a nearby hotel in Enid, Oklahoma, owned by JJ&P Hotels ("JJ&P"), to spend the night and wait for operations to resume.

Plaintiff had become quite cold while exposed to the ice storm at the well site, and wanted to use the hot tub at JJ&P's inn to warm up. Plaintiff entered the hot tub and relaxed. Plaintiff turned on the steam jets and almost immediately began to experience respiratory distress. The distress quickly worsened so that Plaintiff had to return to his room where he put cold compresses on his

head and throat to assist with breathing. When Plaintiff awakened the next morning, he felt very ill, and was unable to work.

During the time Plaintiff was in the hot tub he could smell an order of chlorine that was so strong that it remained with him for a couple of days.

Plaintiff sought medical care and was diagnosed with pleurisy as a result of inhaling chlorine gas. Plaintiff was put on steroids, medicines and an inhaler.

The chlorine chemically burned his lungs so that he has experienced pain up to and including today, and in all reasonable probability will experience such pain and suffering for the rest of his life, for which Plaintiff sues.

Plaintiff has been prescribed an oxygen bag and concentrator to be carried with him and used twenty-four hours a day, every day.

Plaintiff filed suit against JJ&P Hotels, LLC dba Baymont Inn in Federal Court in Dallas, Texas. The suit was removed from the Northern District of Texas case No. 3:15-cv-00903-L to the United States District Court for the Western District of Oklahoma and docketed as case no. 16-cv-00017L, *"Wesley Howard, Plaintiff v. JJ&P Hotels, LLC, dba Baymont Inn."*

A pretrial conference was held with the Court which resulted in settlement negotiations at the instance of the Court. JJ&P Hotels ("JJ&P") counsel advised counsel for Plaintiff Howard that JJ&P had insurance coverage with Defendant, but that Defendant had taken the position that there was no coverage. JJ&P's counsel furnished Howard's counsel with the insurance policy issued by Defendant, a copy of which is attached as Exhibit A hereto and is incorporated by reference. JJ&P counsel also furnished two memoranda from Defendant declining coverage, copies of which are attached as Exhibit B and C hereto.

Negotiations followed which led to a settlement agreement, a copy of which is attached as Exhibit D hereto, under the terms of which JJ&P assigned Defendant's policy and all appurtenant rights to Plaintiff so that Plaintiff could sue JJ&P for coverage under Defendant's policy and prosecute related causes of action as set forth hereinafter. References in this Petition to Plaintiff include Plaintiff in his own right and as standing in the shoes of JJ&P by virtue of the aforesaid assignment.

V.

**PLAINTIFF'S CAUSES OF ACTION AGAINST DEFENDANT**

**A.  BREACH OF CONTRACT**

Plaintiff reasserts and incorporates by reference all of the facts and allegations set forth above. Plaintiff would show that the insurance policy purchased from Defendant was in full force and effect at the time of Plaintiff's claim. Among the perils that the policies insured against were bodily injury claimed against the insured caused by an accident on JJ&P premises caused by JJ&P operations during the policy period.

The claim at issue was reported timely and promptly after discovery and submitted to Defendant for payment. Notice of Claim was given to Defendant in accordance with the terms of the policy and Defendant accepted JJ&P's notice of claim for damages and acknowledged same in writing. Defendant processed the claim, but has refused and failed to pay the claim according to its obligations under the contract of insurance, and by failing has breached the contract.

Defendant was also obligated to provide a defense at its expense, even if the suit was groundless, false or fraudulent. Plaintiff sues for the cost of defense.

## B.  COMMON-LAW CAUSE OF ACTION

Plaintiff reasserts and incorporates by reference all the facts and allegations set forth above. Defendant breached the duty of good faith and fair dealing by unreasonably failing to pay the insurance policy benefits and by failing to conduct an adequate and reasonable investigation. Defendant's basis for failing to pay the claimed insurance benefits was unreasonable, and Defendant knew or should have known that their basis for such failure was unreasonable. Defendant failed to comply with the duty of good faith and fair dealing by delaying and denying Plaintiff's claim for benefits when it knew or should have known that it was reasonably clear that the claim was covered. Such failure to comply with the duty of good faith and fair dealing was a proximate cause of the damage to Plaintiff for which this suit is brought.

## C.  DECEPTIVE TRADE PRACTICES ACT VIOLATIONS

Plaintiff incorporates all the allegations in this *Petition* for this cause of action against Defendant under the provisions of DTPA. Plaintiff has met all conditions precedent to bringing this cause of action against Defendant.

By its omissions, failures and conduct that are described in this *Petition*, Defendant violated Section 17.46 of the DTPA.  In this respect, these violations include, without limitation, unreasonable delays in the investigation, adjustment and resolution of Plaintiff's claim when liability had become reasonably clear.  Specifically, Defendant violated the DTPA in the following respects:

1.  Defendant represented to Plaintiff that the insurance policies and Defendant's adjusting and investigative services had characteristics or benefits that they did not have, which gives Plaintiff the right to recover under Section 17.46 (b) (5) of the DTPA;

2.  Defendant represented to Plaintiff that the insurance policies and Defendant's adjusting and investigative services were of a particular standard, quality, or grade

when they were of another in violation of Section 17.46 (b)(7) of the DTPA;

3.    Defendant represented to Plaintiff that the insurance policies and Defendant's adjusting and investigative services conferred or involved rights, remedies, or obligations that they did not have, which gives Plaintiff the right to recover under Section 17.46 (b)(12) of the DTPA;

4.    Defendant breached an express warranty that the damages caused by a covered peril and then not doing so, violated Sections 17.46 (b) (5), (7) and (12) of the DTPA;

5.    Defendant breached an express warranty that the damages would be covered under the insurance policies at issue. This breach entitles Plaintiff to recover under Sections 17.46 (b) (12) and 17.50 (a) (2) of the DTPA;

6.    Defendant engaged in unconscionable action in that they took advantage of Plaintiff's lack of knowledge, ability and experience to a grossly unfair degree. Defendant' unconscionable conduct gives Plaintiff the right to relief under Section 17.50(a)(3) of the DTPA; and

7.    Defendant's conduct, acts, omissions and failures, as described in this *Petition*, are unfair practices in the business of insurance in violation of Section 17.50 (a)(4) of the DTPA.

All of the above-described acts, omissions and failures of Defendant were relied upon by Plaintiff to his detriment and were a proximate and producing cause of Plaintiff's damages. Plaintiff seeks damages for such conduct as described in this *Petition.*

## D.   TEXAS INSURANCE CODE VIOLATIONS

Plaintiff incorporates all of the allegations in this *Petition* for this cause of action against Defendant under the provision of the Texas Insurance Code. Plaintiff has met all conditions precedent to bringing this cause of action against the Defendant.

By its acts, omissions, failures and conduct, Defendant has engaged in unfair methods of competition and unfair or deceptive acts or practices in the business of insurance in violation of Sections 541.051 and 541.060 of the Texas Insurance Code. Such violations include, without

limitation, all the conduct described in this *Petition* plus Defendant's unreasonable delays in the investigation, adjustment and resolution of Plaintiff's claim and Defendant's failure to pay the claims against Plaintiff when liability had become reasonably clear. Specifically, Defendant is guilty of the following unfair insurance practices:

1.  Defendant engaged in false, misleading and deceptive acts or practices in the business of insurance in this case;

2.  Defendant engaged in unfair claims settlement practices prohibited by Section 17.50 (A) (4) of the DTPA and Section 541.060(1) of the Texas Insurance Code by misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;

3.  Defendant engaged in unfair claims settlement practices prohibited by Section 17.50 (A)(4) of the DTPA and defined in Section 541.060(2) of the Texas Insurance Code by failing to attempt, in good faith, to effectuate a prompt, fair and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear;

4.  Defendant engaged in unfair claims settlement practices prohibited by Section 17.50 (A)(4) of the DTPA and defined in Section 541.060(3) of the Texas Insurance Code by failing to provide promptly to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or for the offer of a compromise settlement of a claim;

5.  Defendant engaged in unfair claims settlement practices prohibited by Section 17.50 (A)(4) of the DTPA and in Section 541.060 (4) of the Texas Insurance Code by failing within a reasonable time to affirm or deny coverage of a claim to a policyholder; or submit a reservation of rights to a policyholder;

6.  Defendant engaged in unfair claims settlement practices prohibited by Section 17.50 (A)(4) of the DTPA and defined in Section 541.060 (7) of the Texas Insurance Code by refusing to pay a claim without conducting a reasonable investigation with respect to the claim; and

7.  Defendant engaged in unfair claims settlement practices prohibited by Section 17.50 (A)(4) of the DTPA and defined in Section 541.060 (l) of the Texas Insurance Code by misrepresenting the insurance policy by making an untrue statement of material fact.

All of the above-described acts, omissions and failures of Defendant were relied upon by Plaintiff to his detriment and were a proximate and producing cause of Plaintiff's damages. Plaintiff seeks damages for such conduct as described in this *Petition*.

## VII.   VIOLATION OF PROMPT PAYMENT OF CLAIMS ACT

Plaintiff would show that Defendant violated the Prompt Payment of Claims Act, Section 542.051, Sub-chapter B of the Texas Insurance Code, by failing to properly and timely investigate and pay the claims at issue. Accordingly, Plaintiff is entitled to relief set forth in Section 542.060 of the act.

## VIII.   DAMAGES

The above described acts, omissions, failures and conduct of Defendant caused Plaintiff's damages which include, without limitation, the payments made by Plaintiff and for which Plaintiff is obligated to resolve the claims, plus legal fees necessary for Plaintiff to resolve the claim.

## IX.   ADDITIONAL DAMAGES

Defendant knowingly and intentionally committed deceptive trade practices and unfair insurance practices as those terms are defined in the applicable statutes. Because of such conduct, Plaintiff is entitled to additional damages as authorized by Section 17.50(b) (l) of the DTPA. Plaintiff is further entitled to the additional damages that are authorized by the Texas Insurance Code.

## X.  EXEMPLARY DAMAGES

Defendant's actions were committed knowingly and intentionally, with a conscious indifference to the rights and welfare of Plaintiff, and with "malice" as that term is defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by Defendant constitute the type of conduct which the State of Texas protects its citizens against by the imposition of exemplary damages. Therefore, Plaintiff seeks the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish Defendant for its wrongful conduct and to set an example to deter Defendant and others similarly situated from committing similar acts in the future.

## XI.  ATTORNEY'S FEES

Plaintiff was compelled to employ attorneys to resolve Plaintiff's claims. In addition, Plaintiff has engaged the services of the below-signed attorneys. Plaintiff seeks attorney's fees for the prosecution of this suit pursuant to Section 17.50(d) of the Texas Business and Commerce Code, Section 542.062 and 542.051, Sub-chapter B of the Texas Insurance Code and Section 38.001 of the Texas Civil Practice and Remedies Code.

## XII.  JURY DEMAND

Pursuant to Rule 216 of the Texas Rules of Civil Procedure, Plaintiff respectfully requests that this case be tried before a jury.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that Defendant be cited to appear and answer, and that upon final jury trial, that Plaintiff be awarded damages as set forth above and which are in a sum in excess of the minimum jurisdiction of this Court, costs of Court, reasonable attorney's fees for the trial and any subsequent appeal of this case, pre-judgment interest, post-judgment interest, those damages authorized by the TEXAS INSURANCE CODE and the TEXAS BUSINESS AND COMMERCE CODE, and for such other and further relief, both at law or in equity, to which Plaintiff may be justly entitled.

Dated this 29th day of July, 2016.

KILGORE & KILGORE, PLLC

By _/s/ W.D. Masterson_
W. D. Masterson
State Bar No. 13184000

3109 Carlisle Street
Dallas, Texas 75204
(214) 969-9099 - Telephone
(214) 953-0133 - Facsimile

**ATTORNEYS FOR PLAINTIFF
WESLEY HOWARD**



**MAXUM**

*Specialty Insurance Group*

## Insurance Policy for:
## JJ&P HOTELS, LLC. dba BAYMONT INN

Maxum Indemnity Company
3655 North Point Parkway,
Suite 500
Alpharetta, Georgia 30005
Telephone: 678 597 4500
Fax: 678 597 4501

EXH. A

JJ&P - 000001

## Common Policy Conditions

**All Coverage Parts included in this policy are subject to the following conditions:**

### A) CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B) CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C) EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### D) INSPECTIONS AND SURVEYS

We have the right but are not obligated to:
1. Make inspections and survey at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
1. Are safe or healthful; or
2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization that makes insurance inspections, surveys, reports or recommendations.

### E) PREMIUMS

The first Named Insured shown in the Declarations:
1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

### F) TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IN WITNESS WHEREOF, Maxum Indemnity Company has caused this policy to be signed by its President and Secretary at Alpharetta, Georgia, but it is not binding unless signed on the Declarations Page by our Authorized Representative.

_Jerome B. Simon_

Secretary

_J. Marshall Turner II_

President

PJ (01/2003)

JJ&P - 000002

# COMMON POLICY DECLARATIONS

Policy No: PRO 0069955-02

| | |
|---|---|
| MAXUM INDEMNITY COMPANY<br>3655 North Point Parkway, Suite 500<br>Alpharetta, Georgia 30005 . | Southern Hospitality Underwriters, Inc. (Griffin, GA)<br>300 Wilson Road<br>Building 300<br>Griffin, GA 30224 |

| | |
|---|---|
| NAMED INSURED: | JJ&P HOTELS, LLC. dba BAYMONT INN |
| MAILING ADDRESS: | 3614 W OWEN K GARRIOTT<br>Enid, OK 73703 |
| POLICY PERIOD: | FROM 12/14/2013 TO 12/14/2014 AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE. |
| BUSINESS DESCRIPTION: | HOTEL |

IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $5,160.00 |
| COMMERCIAL INLAND MARINE COVERAGE PART | Not covered |
| COMMERCIAL PROPERTY COVERAGE PART | Not covered |
| COMMERCIAL PROFESSIONAL LIABILITY COVERAGE PART | Not covered |
| Federal Terrorism Risk Insurance Act until its expiration | Not covered |
| Premium Total: | $5,160.00 |
| Other Charges: | N/A |
| Total: | $5,160.00 |

Audit Period: Annual unless otherwise stated.

FORMS APPLICABLE TO ALL COVERAGE PARTS:
Refer to Endorsement E849.

Countersigned: 1/14/2014

_____

AUTHORIZED REPRESENTATIVE

Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 1985.

DECC (01-03)

JJ&P - 000003

NAMED INSURED: JJ&P HOTELS, LLC. dba BAYMONT INN          POLICY NUMBER: PRO 0069955-02

POLICY PERIOD:   12/14/2013 - 12/14/2014

## FORMS AND ENDORSEMENTS SCHEDULE

### FORMS/ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
|---|---|---|
| PJ | 1/2/2003 | Policy Jacket |
| DECC | 1/1/2003 | Common Dec |
| E048 | 1/2/2003 | Minimum Earned Premium |
| E144 | 4/1/2009 | Service of Suit |
| E632 | 1/1/2009 | Exclusion - Communicable Disease |
| E849 | 3/1/2010 | Forms and Endorsements Schedule |
| E977 | 1/1/2012 | Proposition 65 Exclusion |
| IL0236 | 7/1/2002 | Oklahoma Changes - Cancellation and Nonrenewal |
| RM003 | 1/1/2005 | Commercial Property - Hotels and Motels |
| MISC001 | 6/1/2012 | Claims Reporting |

### FORMS/ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:

| | | |
|---|---|---|
| DECBGL | 7/1/2005 | Commercial General Liability |
| CG0001 | 12/1/2007 | Commercial General Liability Coverage Form |
| CG2029 | 11/1/1985 | Additional Insured - Grantor of Franchise |
| CG2139 | 10/1/1993 | Contractual Liability Limitation |
| CG2144 | 7/1/1998 | Limitation of Coverage to Designated Premises or Project |
| CG2147 | 12/1/2007 | Employment-Related Practices Exclusion |
| CG2155 | 9/1/1999 | Total Pollution Exclusion with a Hostile Fire Exception |
| CG2167 | 12/1/2004 | Fungi or Bacteria Exclusion |
| CG2407 | 1/1/1996 | Products/Completed Operations Hazard Redefined |
| E285 | 1/2/2003 | Exclusion - Diving Board/Platform |
| E363 | 1/2/2003 | Classification Limitation |
| E390 | 5/1/2011 | Hired Auto And Non-Owned Auto Liability |
| E645 | 1/1/2009 | Exclusion - Voluntary Labor |
| E657 | 10/1/2009 | Exclusion - Independent Contractors |
| E713 | 8/1/2007 | Exclusion - Punitive or Exemplary Damages |
| E743 | 3/1/2008 | Exclusion - War/Terrorism |
| E861 | 9/1/2010 | Total Liquor Exclusion |
| E868 | 9/1/2013 | Exclusion/Limitations - Combination Endorsement |
| Contains: | | |
| E673 | 01/01/2009 | Exclusion - Professional Services |
| E687 | 09/01/2009 | Exclusion - Asbestos, Silica and Silica Dust |
| E710 | 08/01/2007 | Exclusion - Employee Retirement Income Security Act of 1974 |

E849 (3/1/2010)                                    Page 1 of 2

Includes copyrighted material of Insurance Services Office, Inc., with its permission.   JJ&P 000004

## FORMS AND ENDORSEMENTS SCHEDULE Continued

| FORMS/ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART: | | |
|---|---|---|
| E711 | 09/01/2010 | Exclusion – Lead |
| E831 | 09/01/2010 | Exclusion – Breach of Contract |
| E767 | 10/01/2009 | Exclusion – Chinese Drywall |
| E737 | 02/01/2008 | Exclusion – Cross Suits |
| E866 | 09/01/2010 | Exclusion – Wrap Up |
| E707 | 08/01/2007 | Exclusion – Pre-Existing Damage or Injury |
| E708 | 08/01/2007 | Exclusion – Infringement of Patent, Trademark, Service Mark or Trade Name |
| E709 | 08/01/2007 | Exclusion – Antitrust Violations |
| E714 | 08/01/2007 | Exclusion – Unfair Competition |
| E715 | 08/01/2007 | Exclusion – Willful Violation of Penal Statute |
| CG 2136 | 03 05 | Exclusion - New Entities |
| E348 | 01/01/2003 | Amendment Deposit Premium and Minimum Premium |
| E704 | 08/01/2007 | Amendment Premium Audit |
| E829 | 01/01/2010 | Definition – Damages |
| IL0021 | 9/1/2008 | Nuclear Energy Liability Exclusion (Broad Form) |

JJ&P - 000005

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective **12/14/2013** at 12:01 A.M. Standard time, forms a part of Policy Number **PRO 0069955-02** issued to **JJ&P HOTELS, LLC. dba BAYMONT INN** by Maxum Indemnity Company.

---

### Minimum Earned Premium

---

It is agreed that in the event of cancellation of this policy by the Insured as specified herein, return premium shall be computed at .90 of the pro rata unearned policy premium (or minimum premium if applicable) subject however to a retention by the Company of not less than 25%.

Nothing in this endorsement is deemed to affect the Company's cancellation rights, which remain as, indicated in the form.

It is further agreed that return premium may be allowed on a pro rata basis if cancelled for non-payment, subject however to retention by the Company of the minimum as shown above.

All other terms and conditions of this policy remain unchanged.

JJ&P - 000006

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **12/14/2013** at 12:01 A.M. Standard time, forms a part of Policy Number **PRO 0069955-02** issued to **JJ&P HOTELS, LLC. dba BAYMONT INN**  by Maxum Indemnity Company.

---

### SERVICE OF SUIT

---

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereby designates the Commissioner, Superintendent or Director of Insurance or other officer specified for that purpose in the statute, and his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted in any Court of competent jurisdiction by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the person listed below as the person to whom said officer is authorized to mail such process or a true copy thereof:

**F. Marshall Turner II**
**President and CEO**
**Maxum Indemnity Company**
**3655 North Point Parkway**
**Suite 500**
**Alpharetta Georgia 30005**

E144 (4/1/2009)                                    Page 1 of 1

JJ&P - 000007

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement, effective **12/14/2013** at 12:01 A.M. Standard time, forms a part of Policy Number **PRO 0069955-02** issued to **JJ&P HOTELS, LLC. dba BAYMONT INN**  by Maxum Indemnity Company.

---

## EXCLUSION - COMMUNICABLE DISEASE

---

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", "personal and advertising injury" and we shall have no obligation to indemnify or defend any insured for "bodily injury," "property damage," or "personal and advertising injury" arising out of the transmission of or alleged transmission of any communicable disease.

E632 (1/1/2009)                                      Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective **12/14/2013** at 12:01 A.M. Standard time, forms a part of Policy Number **PRO 0069955-02** issued to **JJ&P HOTELS, LLC. dba BAYMONT INN** by Maxum Indemnity Company.

## PROPOSITION 65 EXCLUSION

With respect to all coverages under this policy, this insurance does not apply to any damages, loss, cost, or expense arising out of or related to any actual or alleged violation by any party of the **CALIFORNIA SAFE DRINKING WATER AND TOXIC ENFORCEMENT ACT OF 1986** (Chapter 6.6 added by Proposition 65 1986 General Election).

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

JJ&P - 000009

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OKLAHOMA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A. Paragraph 2. of the **Cancellation Common Policy Condition** is replaced by the following:

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

After coverage has been in effect for more than 45 business days or after the effective date of a renewal of this policy, no notice of cancellation will be issued by us unless it is based on at least one of the following reasons:

(1) Nonpayment of premium;

(2) Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted under it;

(3) Discovery of willful or reckless acts or omissions by you that increase any hazard insured against;

(4) The occurrence of a change in the risk that substantially increases any hazard insured against after insurance coverage has been issued or renewed;

(5) A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any covered property or its occupancy that substantially increases any hazard insured against;

(6) A determination by the Insurance Commissioner that the continuation of the policy would place us in violation of the insurance laws of this state;

(7) Your conviction of a crime having as one of its necessary elements an act increasing any hazard insured against; or

(8) Loss of or substantial changes in applicable reinsurance.

B. The following are added to the **Common Policy Conditions** and supersede any provisions to the contrary:

1. **Nonrenewal**

a. If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured at least 45 days before:

(1) The expiration date of this policy; or

(2) An anniversary date of this policy, if it is written for a term longer than one year or with no fixed expiration date.

JJ&P - 000010

b. Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us.

c. If notice is mailed:

   (1) It will be considered to have been given to the first Named Insured on the day it is mailed.

   (2) Proof of mailing will be sufficient proof of notice.

d. If notice of nonrenewal is **not** mailed or delivered at least 45 days before the expiration date or an anniversary date of this policy, coverage will remain in effect until 45 days after notice is given. Earned premium for such extended period of coverage will be calculated pro rata based on the rates applicable to the expiring policy.

e. We will **not** provide notice of nonrenewal if:

   (1) We, or another company within the same insurance group, have offered to issue a renewal policy; or

   (2) You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

f. If we have provided the required notice of nonrenewal as described in B.1.a. above, and thereafter extend the policy for a period of 90 days or less, we will **not** provide an additional nonrenewal notice with respect to the period of extension.

2. **Premium Or Coverage Changes At Renewal**

a. If we elect to renew this policy, we will give written notice of any premium increase, change in deductible, or reduction in limits or coverage, to the first Named Insured, at the last mailing address known to us.

b. Any such notice will be mailed or delivered to the first Named Insured at least 45 days before:

   (1) The expiration date of this policy; or

   (2) An anniversary date of this policy, if it is written for a term longer than one year or with no fixed expiration date.

c. If notice is mailed:

   (1) It will be considered to have been given to the first Named Insured on the day it is mailed.

   (2) Proof of mailing will be sufficient proof of notice.

d. If the first Named Insured accepts the renewal, the premium increase or coverage changes will be effective the day following the prior policy's expiration or anniversary date.

e. If notice is **not** mailed or delivered at least 45 days before the expiration date or anniversary date of this policy, the premium, deductible, limits and coverage in effect prior to the changes will remain in effect until:

   (1) 45 days after notice is given; or

   (2) The effective date of replacement coverage obtained by the insured;

whichever occurs first.

If the first Named Insured then elects **not** to renew, any earned premium for the resulting extended period of coverage will be calculated pro rata at the lower of the new rates or rates applicable to the expiring policy.

f. We will **not** provide notice of the following:

   (1) Changes in a rate or plan filed with or approved by the State Board for Property and Casualty Rates or filed pursuant to the Commercial Property and Casualty Competitive Loss Cost Rating Act applicable to an entire class of business;

   (2) Changes which are based upon the altered nature or extent of the risk insured; or

   (3) Changes in policy forms filed with or approved by the Insurance Commissioner and applicable to an entire class of business.

© ISO Properties, Inc., 2001

# COMMERCIAL GENERAL LIABILITY
# COVERAGE PART DECLARATIONS

Policy No:   PRO 0069955-02

Effective Date: 12/14/2013 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS
NAMED INSURED: JJ&P HOTELS, LLC. dba BAYMONT INN

| LIMITS OF INSURANCE | |
|---|---|
| General Aggregate Limit (Other than Products-completed Operations) | $2,000,000 |
| Products-completed Operations Aggregate Limit | Included |
| Personal and Advertising Injury Limit | $1,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Damage to Premises Rented to You Limit | $300,000 Any One Premise |
| Medical Expense Limit | $1,000 Any One Person |

## DESCRIPTION OF BUSINESS

Form of Business:

☐ Individual       ☐ Partnership       ☐ Joint Venture   ☐ Trust            ☒ Limited Liability Corporation

☐ Organization, including a corporation (but not including a partnership, joint venture, trust, or limited liability company)

Location(s) (including Zip Code) of All Premises You Own, Rent or Occupy
3614 W OWEN K GARRIOTT, Enid, OK 73703

## CLASSIFICATION AND PREMIUM

| Classification | Code No. | Premium Basis* | Pr/CO | Rate All Other | Advance Premium Pr/CO | All Other |
|---|---|---|---|---|---|---|
| HOTEL Rated As: Hotels and Motels - with pools or beaches - less than four stories | 45190-1 | Flat Charged | INCL | INCL | INCL | INCL |
| Additional Insured(s) (Fully Earned) | | | | | | INCL |
| Hired and Non Owned Auto Liability | | | | | | INCL |

\* See backside of DECBGL for definitions

Total Advance Premium: $5,160.00

**FORMS AND ENDORSEMENTS**          (other than applicable Forms and Endorsements shown elsewhere in this policy)

Forms and endorsements applying to this Coverage Part and made a part of this policy at time of issue:
Refer to Endorsement E849.

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 1985

DECBGL (07-05)

JJ&P - 000012

When used as a premium base:

"Area" (premium basis symbol a) means:
The total number of square feet of floor space at the insured premises, computed as follows:

1. For entire buildings, by multiplying the product of the horizontal dimensions of the outside of the outer building walls by the number of floors, including basements but do not use the area of the following:
   a. Courts and mezzanine types of floor openings.
   b. Portions of basements or floors where 50% or more of the area is used for shop or storage for building maintenance, dwelling by building maintenance employees, heating units, power plants or air-conditioning equipment.
2. For tenants, determine the area they occupy in the same manner as for the entire buildings.
3. The rates apply per 1,000 square feet of area.

"Total Cost" (premium basis symbol c) means:
The total cost of all work let or sublet in connection with each specific project including:

1. The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work; however, do not include the cost of finished equipment installed but not finished by the subcontractor if the subcontractor does no other work on or in connection with such equipment; and
2. All fees, bonuses or commissions made, paid or due.
3. The rates apply per $1,000 of total cost.

"Admissions" (premium basis symbol m) means:
The total number of persons, other than employees or the named insured, admitted to the event insured or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes.
The rates apply per 1,000 admissions.

"Payroll" (premium basis symbol p) means:

1. Commissions;
2. Bonuses;
3. Extra pay for overtime work, in accordance with the manuals in use by us;
4. Pay for holidays, vacations or periods of sickness;
5. Payment by an employer of amounts otherwise required by law to be paid by employees to statutory insurance or pension plans, such as the Federal Social Security Act;
6. Payment to employees on a basis other than time worked, such as piecework, profit-sharing or incentive plans;
7. Payment or allowance for hand tools or power tools used by hand provided by employees and used in their work or operations to the insured;
8. The rental value of an apartment or a house provided for an employee based on comparable accommodations;
9. The value of lodging, other than an apartment or house, received by employees as part of their pay, to the extent shown on the insured's records;
10. The value of meals received by employees as part of their pay to the extent shown in the insured's records.
11. The value of store certificates, merchandise, credits or any other substitute for money received by employees as part of their pay;
12. The payroll of mobile equipment operators and their helpers, whether or not the operators are designated or licensed to operate automobiles. If the operators and their helpers are provided to the insured along with equipment hired under contract and their actual payroll is not known, use 1/3 of the total amount paid out by the insured for the hire of the equipment.
13. The payroll of executive officers of a corporation and individual insureds and co-partners. For the purposes of payroll determination, managers of limited liability companies shall be considered executive officers and members of limited liability companies shall be considered co-partners.
    The executive officers of a corporation are those persons holding any of the officer positions created by the named insured's charter, constitution or by-laws or any other similar governing document.
    The payroll of all executive officers of a corporation and individual insureds or co-partners engaged principally in clerical operations or as salespersons, and officers and co-partners who are inactive for the entire policy period, shall be included for premium purposes.
    For part-time or seasonal businesses the payroll amounts may be reduced by 2 percent for each full calendar week in excess of twelve during which the risk performs no operations.
14. The payroll of leased workers furnished to the named insured by a labor leasing firm. Premium on such payroll shall be based on the classifications and rates which would have applied if the leased workers had been the direct employees of the named insured. If payroll is unavailable, use 100% of the total cost of the contract of leased workers as the payroll of leased workers. The premium shall be charged on that amount as payroll.
    If investigation of a particular employee leasing contract discloses that a definite amount of the contract price represents payroll, such amount shall be considered payroll for premium computation purposes.
15. Fees paid to employment agencies for temporary personnel provided to the insured.

Payroll does not include:
1. Tips and other gratuities received by employees;
2. Payments by an employer to group insurance or group pension plans for employees in accordance with the manuals in use by us;

3. The value of special rewards for individual invention or discovery;
4. Dismissal or severance payments except for time worked or accrued vacation;
5. The payroll of clerical office employees. Clerical office employees are those employees who work in an area which is physically separated by walls, floors or partitions from all other work areas of the insured and whose duties are strictly limited to keeping the insured's books or records or conducting correspondence, including any other employees engaged in clerical work in the same area;
6. The payroll of salesmen, collectors or messengers who work principally away from the insured's premises.
   Salesmen, collectors or messengers are those employees engaged principally in any such duties away from the premises of the employer.
   Exception: This term does not apply to any employee whose duties include the delivery of any merchandise handled, treated or sold.
7. The payroll of drivers and their helpers if their principal duties are to work on or in connection with automobiles.
8. The payroll of aircraft pilots or co-pilots if their principal duties are to work on or in connection with aircraft in either capacity.
9. The payroll of draftsmen, if their duties are limited to office work only, and who are engaged strictly as draftsmen in such a manner that they are not exposed to the operative hazards of the business.

The rates apply per $1,000 of payroll.

"Overtime"
1. Definition
   Overtime means those hours worked for which there is an increase in the rate of pay:
   a. For work in any day or in any week in excess of the number of hours normally worked; or
   b. For hours worked in excess of 8 hours in any day or 40 hours in any week;
   c. For work on Saturdays, Sundays or holidays.
   In the case of guaranteed wage agreements, overtime means only those hours worked in excess of the number specified in such agreement.

2. Exclusion Of Overtime Payroll
   The extra pay for overtime shall be excluded from the payroll on which premium is computed as indicated in (1) or (2), provided the insured's books and records are maintained to show overtime pay separately by employee and in summary by classification.
   a. If the records show separately the extra pay earned for overtime, the entire extra pay shall be excluded.
   b. If the records show the total pay earned for overtime (regular pay plus overtime pay) in one combined amount, 1/3 of this total pay shall be excluded. If double time is paid for overtime and the total pay for such overtime is recorded separately, ½ of the total pay for double time shall be excluded.
   Exclusion of overtime pay does not apply to payroll assigned to the "Stevedoring" classifications.

"Gross Sales" (premium basis symbol s) means:
1. The gross amount charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for:
   (a) All goods or products, sold or distributed;
   (b) Operations performed during the policy period;
   (c) Rentals; and
   (d) Dues and fees.

2. Inclusions
   The following items shall not be deducted from the gross sales:
   (a) Foreign exchange discounts;
   (b) Freight allowance to customers;
   (c) Total sales of consigned goods and warehouse receipts;
   (d) Trade or cash discounts;
   (e) Bad debts; and
   (f) Repossession of items sold on installments (amount actually collected).

3. Exclusion
   The following items shall be deducted from gross sales:
   (a) Sales or excise taxes which are collected and submitted to a governmental division;
   (b) Credits for repossessed merchandise and products returned. Allowances for damaged and spoiled goods;
   (c) Finance charges for items sold on installments;
   (d) Freight charges on sales if freight is charged as a separate item on customer's invoice;
   (e) Royalty income from patent rights or copyrights which are not product sales; and
   (f) Rental receipts from products liability coverage only.

The rates apply per $1,000 of gross sales.

"Units" (premium basis symbol u) means:
A single room or group of rooms intended for occupancy as separate living quarters by a family by a group of unrelated persons living together, or by a person living alone. The rates apply per each unit.

"Each" (premium basis symbol t) means:
Each unit exposure as defined in the classification footnotes.

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 07

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2006

JJ&P - 000014

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2006

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© ISO Properties, Inc., 2006

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2006

CG 00 01 12 07  ☐

JJ&P - 000017

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

q. **Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

© ISO Properties, Inc., 2006

JJ&P - 000018

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

© ISO Properties, Inc., 2006

CG 00 01 12 07   □

JJ&P - 000019

(3) An internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

© ISO Properties, Inc., 2006

JJ&P - 000020

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and

© ISO Properties, Inc., 2006

CG 00 01 12 07   □

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      **(1)** "Bodily injury" or "personal and advertising injury":

         **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         **(d)** Arising out of his or her providing or failing to provide professional health care services.

      **(2)** "Property damage" to property:

         **(a)** Owned, occupied or used by,

         **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

      you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

© ISO Properties, Inc., 2006

JJ&P - 000022

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

  **(1)** With respect to liability arising out of the maintenance or use of that property; and

  **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

  **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

  **b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

  **c.** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  **a.** Insureds;

  **b.** Claims made or "suits" brought; or

  **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

  **a.** Medical expenses under Coverage C;

  **b.** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

  **c.** Damages under Coverage B.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

  **a.** Damages under Coverage A; and

  **b.** Medical expenses under Coverage C

  because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

  Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

  **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    **(1)** How, when and where the "occurrence" or offense took place;

    **(2)** The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

© ISO Properties, Inc., 2006

JJ&P - 000024

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    (b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

    **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

    **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2006

CG 00 01 12 07   □
**JJ&P - 000025**

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph a. above;

(2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2006

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2006

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

© ISO Properties, Inc., 2006

      (2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      (2) The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2006
CG 00 01 12 07   ☐
JJ&P - 000029

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED – GRANTOR OF FRANCHISE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

**Name of Person or Organization:**

Baymont Franchise Systems, Inc.
Wyndham Worldwide Corporation
Wyndham Hotel Group, LLC.
22 Sylvan Way
Parsippany, NJ 07054

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as grantor of a franchise to you.

Copyright, Insurance Services Office, Inc., 1984

JJ&P - 000030

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTUAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the DEFINITIONS Section is replaced by the following:

"insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement.

Copyright, Insurance Services Office, Inc., 1992

POLICY NUMBER:   PRO 0069955-02

COMMERCIAL GENERAL LIABILITY<br>CG 21 44 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

**Premises:**

**Project:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2. The project shown in the Schedule.

CG 21 44 07 98

Copyright, Insurance Services Office, Inc., 1984, 1992

Page 1 of 1

JJ&P - 000032

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© ISO Properties, Inc., 2006
**JJ&P - 000033**

COMMERCIAL GENERAL LIABILITY
CG 21 55 09 99

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(a) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(b) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Copyright, Insurance Services Office, Inc., 1998

Page 1 of 1

JJ&P - 000034

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc., 2003

JJ&P - 000035

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PRODUCTS/COMPLETED OPERATIONS HAZARD
## REDEFINED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Description of Premises and Operations:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or

2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph a. of the definition of "Products-completed operations hazard" in the DEFINITIONS Section is replaced by the following:

"Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

Copyright, Insurance Services Office, Inc., 1994

JJ&P - 000036

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement, effective **12/14/2013** at 12:01 A.M. Standard time, forms a part of Policy Number **PRO 0069955-02** issued to **JJ&P HOTELS, LLC. dba BAYMONT INN**  by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

---

### EXCLUSION - DIVING BOARD/ PLATFORM

---

This insurance does not apply to "bodily injury" arising out of the ownership, operation, maintenance or use of any diving board or diving platform.

JJ&P - 000037

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **12/14/2013** at 12:01 A.M. Standard time, forms a part of Policy Number **PRO 0069955-02** issued to **JJ&P HOTELS, LLC. dba BAYMONT INN** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

---

**Classification Limitation**

---

Coverage under this contract is specifically limited to those classification codes listed in the policy. No coverage is provided for any classification code or operation performed by any insured not specifically listed in the coverage part of this policy.

All other terms remain unchanged.

E363 (1/2/2003)                            Page 1 of 1

**JJ&P - 000038**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **12/14/2013** at 12:01 A.M. Standard time, forms a part of Policy Number **PRO 0069955-02** issued to **JJ&P HOTELS, LLC. dba BAYMONT INN** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

## HIRED AUTO AND NON-OWNED AUTO LIABILITY

Insurance is provided only with respect to those coverages that are indicated below:

**Coverage:**

Hired Auto and Non-owned Auto Liability     $1,000,000          Each Occurrence
Subject to General Aggregate Limit.

### HIRED AUTO LIABILITY

The exclusion under **SECTION I.,** COVERAGE A, 2. Exclusion **g.** is modified to include:

    (6)     "Bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your employees in the course of your business.

### NON-OWNED AUTO LIABILITY

The exclusion under **SECTION I.,** COVERAGE A, 2. Exclusion **g.** is modified to include:

    (7)     "Bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person other than you.

The following additional definitions apply:

    **"Hired auto"** means any "auto" you lease, hire, or borrow. This does not include any "auto" you lease, hire, or borrow from any of your employees or members of their households, or from any partner or executive officer of yours.

    **"Non-owned auto"** means any "auto" you do not own, lease, hire or borrow which is used in connection with your business. However, if you are a partnership a "non-owned auto" does not include any auto owned by any partner.

JJ&P - 000039

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **12/14/2013** at 12:01 A.M. Standard time, forms a part of Policy Number **PRO 0069955-02** issued to **JJ&P HOTELS, LLC. dba BAYMONT INN** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

---

### EXCLUSION - VOLUNTARY LABOR

---

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", "personal and advertising injury" and we shall have no obligation to indemnify or defend any insured for "bodily injury," "property damage," or "personal and advertising injury" sustained by any person loaned to or volunteering services to you, arising out of or in the course of work performed by you or on your behalf.

E645 (1/1/2009)                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement, effective **12/14/2013** at 12:01 A.M. Standard time, forms a part of Policy Number **PRO 0069955-02** issued to **JJ&P HOTELS, LLC. dba BAYMONT INN**  by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

---

### EXCLUSION - INDEPENDENT CONTRACTORS

---

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", "personal and advertising injury" and we shall have no obligation to indemnify or defend any insured for "bodily injury", "property damage", or "personal and advertising injury"  arising out of:

A. The premises of any independent contractor; or

B. The operations of any independent contractor for or on behalf of any insured.

C. "Your work" performed by independent contractors and included in the "products-completed operations hazard".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **12/14/2013** at 12:01 A.M. Standard time, forms a part of Policy Number **PRO 0069955-02** issued to **JJ&P HOTELS, LLC. dba BAYMONT INN** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

---

## EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGES

---

The following exclusion is added to the policy:

This insurance does not apply to punitive or exemplary "damages" or treble or other multiple "damages" as may be allowed by statute or law.

If a "suit" is brought against the insured or persons insured hereunder which falls within the coverage provided by this policy, but seeks both compensatory "damages" ("damages" for economic loss and pain and suffering) and punitive, exemplary or multiple "damages" ("damages" as a means of punishment), no coverage shall be provided by this policy for any costs, interests, costs of defense or "damages" attributable to punitive, exemplary or multiple "damages" and we have no duty to defend or indemnify you for any such "damages."

"Damages" means compensation, only in the form of money, for a person or entity who claims to have suffered a "bodily injury," "personal and advertising injury," or who claims to have sustained "property damage."

E713 (8/1/2007)                         Page 1 of 1

JJ&P - 000042

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **12/14/2013** at 12:01 A.M. Standard time, forms a part of Policy Number

**PRO 0069955-02** issued to **JJ&P HOTELS, LLC. dba BAYMONT INN** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

---

**EXCLUSION – WAR/TERRORISM**

---

**A.** Exclusion **i.** under Paragraph **2., Exclusions of Section I. Coverage A. Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War Or Terrorism**

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or
(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or
(4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I. Coverage B. Personal and Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**War Or Terrorism**

"Personal and advertising injury" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or
(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

E743 (03/01/2008)          Includes copyrighted material of Insurance Services office, Inc. with its permission.          Page 1 of 2

JJ&P - 000043

**(4)** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

**C.** The following definition is added to **Section V. Definitions:**

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:
   a. Use or threat of force or violence; or
   b. Commission or threat of a dangerous act; or
   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and
2. When one or both of the following applies:
   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or
   b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

E743 (03/01/2008)          Includes copyrighted material of Insurance Services office, Inc. with its permission.          Page 2 of 2

JJ&P - 000044

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement, effective **12/14/2013** at 12:01 A.M. Standard time, forms a part of Policy Number **PRO 0069955-02** issued to **JJ&P HOTELS, LLC. dba BAYMONT INN** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

---

## TOTAL LIQUOR LIABILITY EXCLUSION

---

Subparagraph c. **Liquor Liability** of Paragraph **2. Exclusions** of **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is deleted and replaced with the following:

c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol;

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages; or

(4) Or in any way arising out of the consumption of alcohol by any person.

E861 (9/1/2010)                                      Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc., with its permission. **JJ&P - 000045**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **12/14/2013** at 12:01 A.M. Standard time, forms a part of Policy Number **PRO 0069955-02** issued to **JJ&P HOTELS, LLC. dba BAYMONT INN** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

---

### EXCLUSIONS/LIMITATIONS – COMBINATION ENDORSEMENT

---

#### EXCLUSION – PROFESSIONAL SERVICES

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", or "personal and advertising injury" and we shall have no obligation to indemnify or defend any insured for "bodily injury," "property damage," or "personal and advertising injury" arising out of the rendering of or failure to render any professional services.

Professional services include, but are not limited to, the rendering or failure to render any of the following:

- Optometric, Dental or Medical procedures or assistance, including first aid;
- Cosmetic services including but not limited to hairstyling, make-up, tattooing or body piercing;
- Development of engineering, architectural, technical, inspection or surveying plans or services;
- Preparing, approving or complying or failing to prepare, approve or comply with maps, plans, shop drawings, opinions, reports, surveys, field orders or drawings and specifications; or
- Supervisory or inspection activities performed as part of any related architectural, engineering, surveying or inspection activities.

E673 (07/2012)

#### EXCLUSION – ASBESTOS, SILICA AND SILICA DUST

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", "personal and advertising injury" and we shall have no obligation to indemnify or defend any insured for "bodily injury," "property damage," or "personal and advertising injury" arising out of or resulting from:

(1) Asbestos, silica, silica dust, asbestos fibers, asbestiform talc or any material and/or substances containing asbestos, silica, silica dust, asbestos fibers or asbestiform talc or any asbestos, silica or silica dust related "bodily injury" or "property damage," or exposure to asbestos, silica, asbestos fibers, silica, silica dust or asbestiform talc in any form, and/or manifestation of any asbestos, silica or silica dust related "bodily injury," including, but not limited to, asbestosis, lung cancer, pleural thickening, mesothelioma, silicosis, emphysema, pneumoconiosis, pulmonary fibrosis, pleuritis, endothelioma or any other bronchogenic carcinoma or any other "bodily injury", sickness, illness or disease of any kind whatsoever or "property damage" ; or

(2) Any alleged act, error, omission or duty involving silica, silica dust, asbestos, asbestos fibers, asbestiform talc or any material and/or substances containing silica, silica dust, asbestos, asbestos fibers or asbestiform talc, its use, exposure, presence, existence, detection, removal, elimination or avoidance; or

E868 (9/1/2013)

Page 1 of 5

Includes copyrighted material of Insurance Services Office, Inc., with its permission. **JJ&P - 000046**

(3) The use, exposure, presence, existence, detection, removal, elimination or avoidance of silica, silica dust, asbestos, asbestos fibers, asbestiform talc or any material and/or substances containing silica, silica dust, asbestos, asbestos fibers or asbestiform talc in any environment, building or structure; or

(4) The existence of asbestos in any form, silica or silica dust, including the cost of investigations or feasibility studies, or the costs of testing, monitoring, abatement, mitigation, cleaning, removal, or disposal of any property or substance; or

(5) Any supervision, instructions, recommendations, warnings or advice given, or which should have been given, in connection with any of the above; or

(6) Any obligation to share "damages" with or repay someone else who must pay "damages" in connection with any of the above.

E687 (09/2010)

## EXCLUSION – EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974

This insurance does not apply to any claim in any way based upon or arising out of the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974 and all amendments thereto, or any other similar law.

E710 (08/01/2007)

## EXCLUSION – LEAD

This insurance does not apply to:

"Bodily injury," "property damage," or "personal and advertising injury" arising out of, resulting from, caused by or contributed to by the ingestion, inhalation, absorption or exposure to lead in any form, or any product containing lead, including:

(1) The cost or expense to test for, monitor, abate, encapsulate, mitigate, contain, remove, detoxify or dispose of lead, lead compounds or materials containing lead;

(2) "Damages" relating to supervision, instructions, recommendations, warnings, or advice given, or which should have been given; or

(3) Any obligation to share "damages" with or repay someone else who must pay "damages."

We have no duty to either defend or indemnify any insured for any claim or "suit" to which this exclusion applies.

E711 (09/2010)

## EXCLUSION – BREACH OF CONTRACT

This insurance does not apply to any claim or "suit" for breach of contract, whether express or oral, nor claims for breach of an implied in law or implied in fact contract, whether "bodily injury", "property damage", "personal and advertising injury" or an "occurrence" is alleged and we shall have no obligation to indemnify or defend any insured for "bodily injury," "property damage," or "personal and advertising injury" or an "occurrence" directly or indirectly arising out of, caused by, or resulting from breach of contract.

This exclusion also applies to any additional insureds under this policy.

E831 (09/01/2010)

## EXCLUSION – CHINESE DRYWALL

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", or "personal and advertising injury" and we shall have no obligation to indemnify or defend any insured for "bodily

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

JJ&P - 000047

injury", "property damage", or "personal and advertising injury" from the use, installation, distribution, or sale of drywall and/or sheetrock manufactured in whole, or part, in China.

E767 (10/01/2009)

### EXCLUSION – CROSS SUITS

This insurance does not apply to any liability of one insured for "bodily injury" or "property damage" to another insured.

E737 (02/01/2008)

### EXCLUSION – WRAP UP

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at any construction project in which you are or have been involved, if a consolidated (wrap-up) insurance program or similar program has been provided by the prime contractor/project manager or owner of the construction project.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:
  (1)  Provides coverage identical to that provided by this Coverage Part;
  (2)  Has limits adequate to cover all claims; or
  (3)  Remains in effect.

E866 (09/10)

### EXCLUSION – PRE-EXISTING DAMAGE OR INJURY

This insurance does not apply to:

**(1)** Any "bodily injury" or "property damage", whether such "bodily injury" or "property damage" is known or unknown:

  (a) Which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier); or
  (b) Which is, or is alleged to be, in the process of occurring at the inception date of the policy (or the retroactive date of this policy, if any, whichever is earlier) even if the "occurrence" continues during this policy period.

**(2)** Any "bodily injury" or "property damage", whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier).

"Bodily injury" or "property damage" which first occurs during this policy period includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of this policy period.

We have no duty to either defend or indemnify any insured for any claim or "suit" to which this exclusion applies.

E707 (08/01/2007)

### EXCLUSION – INFRINGEMENT OF PATENT, TRADEMARK, SERVICE MARK OR TRADE NAME

Exclusion i. of **COVERAGE B** is deleted and replaced with the following:

This insurance does not apply to "personal and advertising injury" arising out of the infringement of patent, trademark, service mark, trade name, trade dress, trade secrets, copyright, title, or slogan, or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.**JJ&P - 000048**

other intellectual property rights.

E706 (08/01/2007)

## EXCLUSION – ANTITRUST VIOLATIONS

The following exclusion is added to **COVERAGE B:**

This insurance does not apply to "personal and advertising injury" arising out of antitrust violations.

E709 (08/01/2007)

## EXCLUSION – UNFAIR COMPETITION

The following exclusion is added to **COVERAGE B:**

This insurance does not apply to "personal and advertising injury" arising out of unfair competition.

E714 (08/01/2007)

## EXCLUSION – WILLFUL VIOLATION OF A PENAL STATUTE

The following exclusion is added to **COVERAGE B:**

This insurance does not apply to "personal and advertising injury" arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured.

E715 (08/01/2007)

## EXCLUSION – NEW ENTITIES

Paragraph **3.** of **SECTION II – WHO IS AN INSURED** does not apply.

CG 21 36 03 05

## AMENDMENT – DEPOSIT PREMIUM AND MINIMUM PREMIUM

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, Paragraph **5. Premium Audit,** subparagraph **b.,** is deleted and replaced by the following:

Premium shown in this Coverage Part as advance premium is both a deposit premium and a minimum premium for the full policy period. At the close of each audit period, we will compute the earned premium for that period. If the earned premium is more than the advance premium, notice of the amount by which it exceeds the advance premium will be sent to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the earned premium is less than the advance premium, the advance premium will apply as the minimum premium, with no return premium payable to you.

E348 (01/01/2003)

E868 (9/1/2013)                    Page 4 of 5

Includes copyrighted material of Insurance Services Office, Inc., with its permission. **J&P - 000049**

## AMENDMENT – PREMIUM AUDIT

The following is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS,** Paragraph **5. Premium Audit:**

**d.** If the Insured fails to pay the Company for any additional audit premium developed within 30 days after notice is given of the amount due, then the Company will be entitled to collect from the Insured any cost incurred in the collection process. Such cost shall include, but not be limited to, collection agency fees, attorney's fees, court costs and interest.

E704 (08/01/2007)

## DEFINITION – DAMAGES

The following is added to **SECTION V – DEFINITIONS:**

"Damages" means compensation, only in the form of money, for a person or entity who claims to have suffered "bodily injury" or "personal and advertising injury" or who claims to have sustained "property damage".

E829 (01/01/2010)

Includes copyrighted material of Insurance Services Office, Inc., with its permission. **J&P - 000050**

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

IL 00 21 09 08

JJ&P - 000052

# COMMERCIAL PROPERTY – HOTELS and MOTELS
THESE ARE "LIMITED SERVICE" ESTABLISHMENTS, WITH NO MORE THAN TWO-STORIES

## *Most Likely Loss Scenarios*

- Injuries caused by slips/trips/falls, primarily on loose/torn carpets, in parking lots, on sidewalks and walkways, and on stairs; broken bones and limbs caused by falls due to loose handrails on stairs or loose/defective balcony railings.

- Injuries from swimming pool hazards: slips and falls on wet deck areas; electrical shock; contact with pool chemicals; and near-drownings.

- Injuries from restaurant-related incidents: slips/falls, burns from hot plates or beverages, foodborne illnesses, fires.

- Being sued as the responsible party when guests are victims of robbery or other violent crime on the premises.

- Being sued as a responsible party when death or injuries occur because of a violation of the Life Safety Code.

## *Recommended Risk Management Practices*

### Proper Risk Transfer

- Have written contracts with all "contractors" (any other party hired to perform work on the premises) including, but not limited to: building/grounds/parking lot maintenance or construction; swimming pool maintenance; elevator maintenance; water damage and/or mold remediation; roofing, HVAC, electrical, plumbing, landscaping, snow & ice removal, or other "specialty trades"; janitorial services; and security services.

- Require certificates of Insurance from contractors and all other parties who have their employees working on your premises - verify that the other parties maintain Workers' Compensation, Commercial General Liability, Excess Liability, and Commercial Auto policies, and that you are listed as an additional insured on the primary and excess liability policies. Liability limits should be $1 million per occurrence on the primary CGL and $5 million total excess limits.

- Retain the certificates of insurance from all parties in a pending system that identifies the approaching certificate expiration so that the certificates may be updated on renewal.

### Controlling the Premises/Operations Exposures

- Establish a documented inspection and maintenance program to keep all structures and common areas in good repair: **parking lots, sidewalks, stairs (and handrails), balconies (including railings) free of defects, debris, or clutter; **adequate indoor and outdoor lighting; **prompt removal of natural refuse (leaves, twigs, stones, dirt, runoff) and human-created rubbish (construction materials, bottles, cans, paper, cigarettes); **routinely inspect roof conditions – prevent leaks, prevent collapse due to snow/ice loading; **immediate water damage clean-up and remediation; **prompt response to reports of water leaks; **frequent cleaning of air vents and ducts, replacement of air filters; **trees and shrubbery well-trimmed; **swimming pool – equipment maintenance, safe storage of chemicals, proper pool markings and signage, fence and gate condition/operation, regular water testing.

- Make sure that warning signs are posted in all areas where any construction or major repair hazards exist, such warnings to remain in place until corrective repair/maintenance tasks have been completed. Cordon off the area if practical.

- Maintain all furniture in good condition – sturdy, free of splinters or sharp edges, no protruding nails or screws.

- Establish a documented inspection and maintenance program for electrical safety:  grounding for vending machines, ice makers, television/electronic game units; ground fault circuit interrupters on bathroom and swimming pool area outlets.

- Establish methods for maintaining proper levels of security on the premises: perimeter protection; access control (e.g., system for guest room entry and visitor identification); key control; surveillance and patrols for lobby, guest room floors, stairwells, and parking lot).  Obtain the assistance of the local police department crime prevention unit to accomplish this.

- Make sure all units comply with the Life Safety Code: fire & smoke alarms in guest rooms, common hallways, and at the tops of stairways; emergency exit requirements; illuminated hallways/stairways/means of egress; back-up power source and emergency lighting. Establish a system for maintaining voice communications with guests during emergencies. Have a UL-listed central station alarm system.  Have certain employees on each shift trained and certified in first aid and CPR, and emergency evacuation of guests.



**Disclaimer:**
Information provided herein by Maxum Indemnity Company is intended solely for safety awareness purposes and in no way changes, alters, or amends the terms and/or conditions of your policy.

Specialty Insurance Group



*INDEMNITY COMPANY*

## Claims Reporting

All claims should be reported immediately. It is imperative that Maxum receive notice of a claim as soon as possible.

Claims can either be reported directly to Maxum or to your agent for processing.

All legal notices should be sent by fax or overnight mail. Many states have limited time frames to file a responsive pleading, thus requiring overnight mail.

If you want to report directly to Maxum, please use one of the methods listed below and include the following information:

1. Name of the insured
2. Policy number and policy dates
3. Date of the loss
4. Detailed description of how and where loss occurred
5. Names, address, home and cell phone numbers of all persons involved
6. Business, home and cell phone numbers of insured
7. Police department name and case number, if reported to police
8. Detailed description of injury or damages

Claims can be reported in the following ways:

1. **E-mail**
   Email to: claims@mxmsig.com

2. **Fax**
   Address to: Claims Department and send fax to (678) 597-4501

3. **Phone**
   Toll Free: (800) 598-6324

4. **U.S. Mail**
   Address to:
   Claims Department
   Maxum Indemnity Company
   3655 North Point Parkway, Suite 500
   Alpharetta, GA 30005

JJ&P - 000054



Specialty Insurance Group

April 1, 2015

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

Mary Hornberger
JJ&P Hotels, LLC
3614 West Owen K. Garriot Road
Enid, OK 73703

| | | |
|---|---|---|
| RE: | Insured: | JJ&P Hotels, LLC d/b/a Baymont Inn |
| | Policy No.: | PRO 0069955-01 |
| | Claimant: | Wesley Howard |
| | DOL: | 2/21/13 |
| | File No.: | PRO 0069955-1-1 |

Cause No. DC-15-01284; *Wesley Howard v. Wyndham Hotel Management, Inc. d/b/a Baymont Inns Hospitality*; In the 193rd Judicial District Court of Dallas County, Texas

Dear Ms. Hornberger:

We write regarding the above-referenced claim. We have reviewed the complaint in the lawsuit styled; Cause No. DC-15-01284; *__Wesley Howard v. Wyndham Hotel Management, Inc. d/b/a Baymont Inns Hospitality;__* in the 193rd Judicial District Court of Dallas County, Texas (the "lawsuit"). We have also examined the above-referenced commercial general liability policy issued by Maxum Specialty Insurance Group ("Maxim") to JJ&P Hotels, LLC d/b/a Baymont Inn ("Baymont") for the period of December 14, 2012 to December 14, 2013 (the "policy").

Maxum has examined the allegations made in the lawsuit and it has compared that information with the terms, conditions, limitations and exclusions of the policy. Maxum must respectfully decline any duty to defend Baymont as a result of the lawsuit, as explained in more detail below.

## THE LAWSUIT

MAXUM INDEMNITY COMPANY  •  MAXUM CASUALTY INSURANCE COMPANY

3655 North Point Parkway   •   Suite 500   •   Alpharetta, Georgia 30005   •   678-597-4500   •   Fax 678-597-4501   •   www.mxmslg.com

EXH. B

**JJ&P - 000055**

On February 29, 2015, Wesley Howard filed suit against Wyndham Hotel Management, Inc. d/b/a Baymont Inns Hospitality.

It is alleged that in February 2013, Plaintiff was working in the oil fields for Baker Hughes running coiled tubing in horizontal wells. An ice storm hit the well site while Plaintiff was working. Running water could not be used during operations; therefore, operations were shut down.

Plaintiff's crew was ordered to go to a nearby hotel owned by the Defendant in Enid, Oklahoma to spend the night and wait for operations to resume.

Plaintiff entered the hot tub at the hotel. When he turned on the steam jets, he almost immediately began to experience respiratory distress. The distress quickly worsened so that Plaintiff had to return to his room and put a cold compress on his head and throat to assist with breathing. When Plaintiff awakened the next morning, he felt very ill and was unable to work.

Plaintiff alleges he contracted pleurisy as a result of inhaling chlorine gas in the hot tub. He was given steroids, medicines, and an inhaler. The chlorine gas chemically burned his lungs so that he has and continues to experience pain. He was prescribed an oxygen bag and concentrator to be carried with him and used twenty-four hours a day, every day.

Plaintiff sues for: (1) premise liability; (2) negligence and gross negligence; and (3) assault. Plaintiff seeks the following damages: (1) past and future physical injury, pain and suffering; (2) the costs of past and future medical treatment; (3) past and future mental anguish, emotional distress, and physical distress; (4) lost wages and loss of future earning capacity; (5) exemplary damages; (6) prejudgment and post-judgment interest; and (7) all costs of court.

## THE MAXUM POLICY

Maxum issued commercial general liability policy number PRO 0069955-01 to JJ&P Hotels, LLC d/b/a Baymont Inn[1] for the period of December 14, 2012 to December 14, 2013 (the "policy"). The policy has an each occurrence limit of $1 million and a general aggregate limit of $2 million.

The policy provides, in part, that Maxum "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'…to which this insurance applies."

---

[1]     Baymont Franchise Systems, Inc., Wyndham Worldwide Corporation and Wyndham Hotel Group, LLC are additional insureds. *See* the policy, ADDITIONAL INSURED – GRANTOR OF FRANCHISE endorsement.

Maxum "will have the right and duty to defend the insured against any 'suit' seeking those damages."[2]

## BASES FOR DENIAL OF COVERAE

### A.  The Pollution Exclusion

The policy contains a TOTAL POLLUTION EXCLUSION WITH A HOSTILE FIRE EXCEPTION endorsement (the "Pollution Exclusion"), which modifies the commercial general liability coverage part and provides as follows:

> f.  Pollution
>
> (1)  "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
>
> This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:
>
> ***

"Pollutants" are defined in the policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."[3]

Here, Plaintiff alleges in the lawsuit that after he entered the hot tub and turned on the steam jets, he immediately began to experience respiratory distress. He alleges he contracted pleurisy as a result of inhaling chlorine gas in the hot tub.

Because Plaintiff alleges he was injured as the result of the alleged discharge, dispersal, seepage, migration, release or escape of pollutants, there is no coverage under the policy.

### B.  Lack of "Occurrence"

---

[2]    *See* the policy, SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAE LIABILITY, 1. Insuring Agreement.

[3]    *See* the policy, SECTION V – DEFINITIONS.

The only policy applies to "bodily injury" if it is caused by an "occurrence" that takes place in the "coverage territory."[4] "Occurrence," is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[5]

Plaintiff alleges that Defendant committed the tort of assault. Even if the Pollution Exclusion did not apply, to the extent damages are awarded to Plaintiff in the lawsuit for the tort of assault, there would be no coverage under the policy because there would be no "occurrence."

## C.   Expected or Intended Injury Exclusion

The policy excludes from coverage "bodily injury" that is "expected or intended from the standpoint of the insured."

Plaintiff alleges that Defendant committed the tort of assault. Even if the Pollution Exclusion did not apply, to the extent damages are awarded to Plaintiff in the lawsuit for the tort of assault, there would be no coverage under the policy for "bodily injury" that was "expected or intended" by the insured.

## D.   Punitive Damage Exclusion

The EXCLUSION-PUNITIVE OR EXEMPLARY DAMAGES endorsement to the policy excludes coverage for punitive or exemplary "damages"[6] or treble or other multiple "Damages" as may be allowed by law or statute.[7]

Even if the Pollution Exclusion does not apply, there would be no coverage for an award of punitive or exemplary damages in the lawsuit under the policy.

---

[4]     *See* the policy, SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAE LIABILITY, 1. Insuring Agreement.

[5]     *See* the policy, SECITON V – DEFINITIONS.

[6]     "Damages" means "compensation, only in the form of money, for a person or entity who claims to have suffered a 'bodily injury,'..."   See the policy, EXCLUSION-PUNITIVE OR EXEMPLARY DAMAGES endorsement.

[7]     The EXCLUSION-PUNITIVE OR EXEMPLARY DAMAGES endorsement further provides that "[i]f a 'suit' is brought against the Insured or persons inured hereunder which falls within the coverage provided by this policy, but seeks both compensatory 'damages' ...and punitive, exemplary or multiple 'damages'..., no coverage shall be provided by this policy for any costs, interests, costs of defense or 'damages' attributable to punitive, exemplary or multiple 'damages' and we have no duty to defend or indemnify you for such 'damages.'"

---

MAXUM INDEMNITY COMPANY   •   MAXUM CASUALTY INSURANCE COMPANY

3655 North Point Parkway   •   Suite 500   •   Alpharetta, Georgia 30005   •   678-597-4500   •   Fax 678-597-4501   •   www.mxmslg.com

## RESERVATION OF RIGHTS

This letter is intended to reserve Maxum's including the right to file a declaratory judgment action to determine the scope and extent of its coverage obligations. Maxum reserves the right to amend this coverage decision as additional facts are learned. Maxum also reserves its right to deny coverage based upon all other terms, conditions, exclusions, and endorsements contained in the policy. Neither this letter nor any other communication by Maxum shall operate as a waiver or modification of any terms, conditions, limitations, exclusions, monetary limits, deductibles, retentions or other provisions of the policy.

To the extent you disagree with this coverage decision, please state any reasons for such disagreement in writing and forward those to us as soon as possible. Further, to the extent you have additional information or facts regarding the lawsuit or the claim; please forward those to us immediately for review.

[1]      "Damages" means "compensation, only in the form of money, for a person or entity who claims to have suffered a 'bodily injury,'..."   See the policy, EXCLUSION-PUNITIVE OR EXEMPLARY DAMAGES endorsement.

[1]      The EXCLUSION-PUNITIVE OR EXEMPLARY DAMAGES endorsement further provides that "[i]f a 'suit' is brought against the Insured or persons inured hereunder which falls within the coverage provided by this policy, but seeks both compensatory 'damages' ...and punitive, exemplary or multiple 'damages'..., no coverage shall be provided by this policy for any costs, interests, costs of defense or 'damages' attributable to punitive, exemplary or multiple 'damages' and we have no duty to defend or indemnify you for such 'damages.'"

Very truly yours,

*Helen A. Farrell*

Helen A. Farrell
Sr. Technical Claims Specialist
Maxum Indemnity Company
678.597.4529
hfarrell@mxmsig.com


cc:      Southern Hospitality
         300 Wilson Road
         Building 300

JJ&P - 000059

Griffin GA 30224

JJ&P - 000060



Joseph A. Ziemianski
Direct Dial: (832) 214-3920
jziemianski@cozen.com

September 30, 2015

Michael H. "Mick" Cottom                                    **via E-mail and Telecopy**
RCI Insurance Group
Cottom & Associates, Inc.
P.O. Box 1185
Claremore, OK 74018

RE:   Insured:      JJ&P Hotels, LLC d/b/a Baymont Inn
      Policy No.:   PRO 0069955-01
      Claimant:     Wesley Howard
      DOL:          2/21/13
      File No.:     PRO 0069955-1-1

      Cause No. DC-15-01284; *Wesley Howard v. Wyndham Hotel Management, Inc.
      d/b/a Baymont Inns Hospitality*; In the 193rd Judicial District Court of Dallas
      County, Texas (the "Lawsuit")

Dear Mr. Cottom:

      We write in response to your email dated September 21, 2015 and on behalf of Maxum
Specialty Insurance Group ("Maxum"). We write in supplement to Maxum's prior coverage
letters regarding the above-referenced matter.

      We have analyzed Maxum commercial general liability policy number PRO 0069955-01,
issued to JJ&P Hotels, LLC d/b/a Baymont Inn ("Baymont")[1] for the period of December 14,
2012 to December 14, 2013 (the "policy"), the petition in the above-referenced Lawsuit, and the
information you provided in your email dated September 21, 2015.

      Respectfully, Maxum must continue to decline any duty to defend Baymont related to the
Lawsuit, for the reasons stated in Maxum's prior coverage correspondence and those stated
below.

---

[1]     Baymont Franchise Systems, Inc., Wyndham Worldwide Corporation and Wyndham Hotel Group, LLC are
additional insureds. See the policy, ADDITIONAL INSURED – GRANTOR OF FRANCHISE endorsement.

---

LyondellBasell Tower  1221 McKinney  Suite 2900  Houston, TX 77010
832.214.3900   800.448.8502   832.214.3905 Fax   www.cozen.com

EXH. C                                                      **JJ&P - 000066**

Michael H. "Mick" Cottom
September 30, 2015
Page 2

## COVERAGE ISSUES

### I.    The Pollution Exclusion

As explained in Maxum's prior coverage correspondence, the policy contains a TOTAL POLLUTION EXCLUSION WITH A HOSTILE FIRE EXCEPTION endorsement (the "Pollution Exclusion"), which modifies the commercial general liability coverage part and provides as follows:

> f.    Pollution
>
> (1)    "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
>
> This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:
>
> ***

"Pollutants" are defined in the policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."[2]

The Supreme Court of Oklahoma and courts across the country have held that language similar to the pollution exclusion in the policy is clear and unambiguous.[3]

---

[2]    *See* the policy, SECTION V – DEFINITIONS.

[3]    *See Bituminous Cas. Corp. v. Cowen Constr., Inc.*, 55 P.3d 1030 (Okla. 2002) (rejecting the argument that the exclusion applied only to environmental pollution in lead context); *Kerr-McGee v. Admiral Insurance Co.*, 905 P.2d 760 (Okla. 1991) (holding the pollution exclusion was clear and unambiguous in industrial waste context); *Bituminous Cas. Corp v. St. Clair Lime Co.*, 69 F.3d 547 (10th Cir. 1995) (applying Oklahoma law) (the insurer had no duty to defend or indemnify where the underlying plaintiffs alleged exposure to widespread and continuous fog-like pollution, smoke and smog containing toxins, fumes and particulates pursuant to the  unambiguous pollution exclusion). *See also, e.g., See also National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. CBI Industries*, 907 S.W.2d 517 (Tex. 1994) (finding the language in the pollution exclusion clear and susceptible of only one possible interpretation); *Zaiontz v. Trinity Universal Ins. Co.*, 87 S.W.3d 565 (Tex. App.—San Antonio 2002) (applying unambiguous pollution exclusion and finding the fumes from the Smoke and Fire Eliminator were a "pollutant"); *Colony Nat'l Ins. Co. v. Specialty Trailer Leasing, Inc.*, 620 F. Supp.2d 786 (N.D. Tex. 2009) (finding that high concentrations of inert, naturally occurring gasses—such as argon—constituted a "pollutant" with regard to an insurance coverage policy exclusion; therefore, there was no duty to defend the insured); *Nautilus Ins. Co. v. Country Oaks Apts., Ltd.*, 556 F.Supp.2d 611 (W.D. Tex. 2008) (no duty to defend where alleged pollutant, higher than normal carbon monoxide levels, allegedly caused bodily injury pursuant to the pollution exclusion); *Hamm v. Allstate Ins. Co.*, 286 F.Supp.2d 790 (N.D. Tex. 2003) (chemical fumes are "pollutants;" pollution exclusion applied).

JJ&P - 000067

Michael H. "Mick" Cottom
September 30, 2015
Page 3

We are aware of no authority supporting the proposition that "once chlorine is mixed with water, it is no longer a pollutant." To the contrary, "[t]here is no question that [liquid] chlorine is a pollutant within the meaning of the policy."[4] Maxum, however, welcomes any additional information or authority regarding this proposition that you may have.

Courts applying Oklahoma law, similarly, have found the following to be "pollutants" as defined in the pollution exclusion context: sewage, waste material, pesticides, lead, industrial waste, and toxic "fog", "smog", or "smoke".[5] A court applying Colorado law has found that residual chlorine was a "pollutant" within the meaning of a commercial general liability insurance policy.[6] A court applying Michigan law found that the pollution exclusion applied and barred the insured's claim for coverage where chlorine gas was released after bleach was mixed with alum, resulting in exposure to third parties.[7]

Here, Plaintiff alleges in the Lawsuit that after he entered the hot tub and turned on the jets, he immediately began to experience respiratory distress. Plaintiff alleges he sustained injury as a result of inhaling chlorine gas.

Such allegations necessarily implicate the pollution exclusion, which applies to "actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." Chlorine, and its fumes, whether in solid, liquid or gaseous form, are certainly within the meaning of "pollutants" as defined by the policy and as interpreted by the courts.

While it may be true that others in the vicinity of the hot tub may not have been injured, as indicated in your email, such a fact does not alter the meaning of "pollutant" and the application of the pollution exclusion.

---

[4]     *U.S. Fidelity & Guar. Co. v. Jones Chem., Inc.*, 1999 US App. LEXIS 24306 (6th Cir. Sept. 27, 1999) (applying Ohio law).

[5]     *See, supra*, notes 4-7. *See also Certain Underwriters at Lloyds London v, B3*, 262 P.3d 397 (Okla. App. 2011) (finding sewage a "pollutant" within the pollution exclusion context and no coverage for the underlying claim).

[6]     *See Blackhawk-Central City Sanitation Dist. v. American Guarantee and Liability Ins. Co.*, 214 F.3d 1183 (10th Cir. 2000) (applying Colorado law) (fecal Coliform Bacteria, Ammonia, Residual Chlorine found to be "pollutants" within the meaning of a CGL policy).

[7]     *See Gulf Insurance Co. v. City of Holland*, 2000 WL 33679413 (W.D. Mich. April 3, 2000).

JJ&P - 000068

Michael H. "Mick" Cottom
September 30, 2015
Page 4

## II.   Lack of "Occurrence" Regarding Assault Claim and Expected and Intended Injury Exclusion

Plaintiff asserts a cause of action for assault in the Lawsuit. While we agree with the statements in your email regarding the merits of such a claim, we must examine the policy in determining whether Maxum has a duty to defend or indemnify Baymont.

The policy applies only to an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[8]   The policy also excludes from coverage "bodily injury" that is "expected or intended from the standpoint of the insured."[9]

Assault is not the result of an "accident" or "occurrence," as that term is defined in a liability policy, under Oklahoma law.[10]   An insurer is not obligated to defend an action against its insured where the insurer would not be liable under its policy for any recovery.

As stated in Maxum's prior coverage correspondence, even assuming the Pollution Exclusion does not apply, there would be no coverage for any damages awarded for assault—an intentional tort—in the Lawsuit.

### REQUEST FOR ADDITIONAL INFORMATION

Maxum has analyzed the allegations made in the Lawsuit and the information provided to it regarding the claim. Maxum has investigated the allegations within the parameters of the policy, but it is constrained by the pending Lawsuit from contacting certain witnesses, including

---

[8]      See the policy, SECITON V – DEFINITIONS.

[9]      Id.

[10]      See Massachusetts Bay Ins. v. Gordon, 708 F.Supp. 1232 (W.D. Okla. 1989) (citing United States Fidelity and Guaranty Co. v. Briscoe, 205 Okl. 618, 239 P.2d 754 (1952) (defining "accident" as "an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event, chance, or contingency." "Accidental" means "happening by chance or unexpectedly, undesigned; unintentional; unforeseen, or unpremeditated." The "words 'accident' and 'accidental' have never acquired any technical meaning in law, and when used in an insurance contract, they are to be construed and considered according to common speech and common usage of people generally"). See also American Manufacturers Mutual Ins. Co. v. Wodarski, 68 F.3d 483 (10th Cir. 1995) (sexual harassment is not an "accident" under Oklahoma law); Shelter Ins. Co. v. Svigart, 2015 WL 403080 (W.D. Okla. Jan. 28, 2015) (courts applying Oklahoma law have held that false imprisonment and sexual assault and battery claims are excluded under the expected or intended exclusion of a liability policy because the causes require intent). See also Hartrick v. Great Am. Lloyd's Ins. Co., 62 S.W.3d 270 (Tex. App.—Houston [1st Dist.] 2001) (breach of implied warranty is not an "occurrence"); Houston Petroleum Co. v. Highlands Ins. Co., 830 S.W.2d 153 (Tex. App.—Houston [1st Dist.] 1990) (exposure to fraudulent promises, false representations, and untrue statements are not "occurrences"); T.C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co., 784 S.W.2d 692 (Tex. App.—Houston [1st Dist.] 1989)(CGL policy offered no coverage for breach of warranty claims); Decorative Center of Houston v. Employers Cas. Co., 833 S.W.2d 257 (Tex. App.—Corpus Christi 1992) (no coverage for claim of intentional act of nuisance).

Michael H. "Mick" Cottom
September 30, 2015
Page 5

but not limited to the Plaintiff, and ascertaining additional information regarding the allegations.
To the extent you have additional information, however, Maxum will gladly consider it.  Please
provide any such additional information at your earliest convenience.

This letter is intended to continue to reserve Maxum's including the right to file a
declaratory judgment action to determine the scope and extent of its coverage obligations.
Maxum reserves the right to amend this coverage decision as additional facts are learned.
Maxum also reserves its right to deny coverage based upon all other terms, conditions,
exclusions, and endorsements contained in the policy.   Neither this letter nor any other
communication by Maxum shall operate as a waiver or modification of any terms, conditions,
limitations, exclusions, monetary limits, deductibles, retentions or other provisions of the policy.

With best regards, I am

Sincerely yours,

COZEN O'CONNOR

Joseph A. Ziemianski

JAZ/JBL

JJ&P - 000070

## SETTLEMENT AGREEMENT

This is a Settlement Agreement ("Agreement") between Wesley Howard (hereinafter referred to as "Howard" or "Plaintiff") and JJ&P Hotels, LLC dba Baymont Inn (hereinafter referred to as "JJ&P" or "Defendant") which as used herein, includes JJ&P and any of its subsidiaries, as well as any current or former officer, director, manager, agent, employee, servant, or assign thereof; Howard and JJ&P collectively are referred to herein as the "Parties" or singularly as a "Party."

The Parties enter into this Agreement for the purpose of conclusively resolving all claims by Howard against JJ&P, and its subsidiaries, affiliates, owners, investors, officers, directors, employees, and agents, past and present (collectively the "Released Parties") including, but not limited to, all claims arising out of Howard's relationship with JJ&P Hotels, as well as any and all other claims or potential claims that Howard may have against any of the Released Parties;

WHEREAS, Howard filed a lawsuit now styled and numbered *Wesley Howard v. JJ&P Hotels, LLC* Civil Action No. 5:16-cv-00017-L; in the United States District Court for the District of Oklahoma on February 3, 2015 (the "Lawsuit");

WHEREAS, the Parties have decided to resolve any and all disputes or differences Howard has against JJ&P, including without limitation those arising in any way from Howard's injury in the hot tub at JJ&P's hotel located in Enid, Oklahoma, with the distinct understanding between the Parties that the settlement of such claims, demands, allegations, assertions, causes of action, disputes, and differences:  a) is made in compromise and settlement of disputed claims; and b) is being made to avoid the expense and uncertainty of litigation; and

WHEREAS, at the time of Plaintiff's injury Defendant was a named insured under Maxum Indemnity Company ("Maxum") General Liability Policy No. PRO 0069955-01 (the "Policy"); and

WHEREAS, Defendant made a claim under the Maxum Policy for coverage of Plaintiff's claim in the lawsuit, but Maxum denied liability;

NOW THEREFORE, in consideration of the mutual promises and agreements herein contained, including the recitals set forth above and the assignment provided for herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.   **Stipulation and Assignment.**

RELEASE, SETTLEMENT AND CONFIDENTIALITY AGREEMENT – Page 1

Defendant hereby stipulates and admits liability to Plaintiff for Plaintiff's actual damages arising with respect to Plaintiff's claims in the Lawsuit, the allegations of which, including the stipulated occurrence when Plaintiff was using the hot tub at JJ&P's hotel, are incorporated herein by reference, and assigns to Plaintiff all rights of Defendant to coverage, payment and indemnity of Plaintiff's claims under the Policy, together with all causes of action which Defendant has against Maxum for bad faith refusal to accept coverage under the policy, including the right, if any, to recover both actual and punitive damages, together with any and all related claims against Maxum, in exchange for the agreement by Plaintiff to seek recovery of all claims heretofore asserted by Plaintiff solely against Maxum, its successors and assigns.

2.    **Dismissal.**

In consideration of the assignment herein made by Defendant to Plaintiff, Plaintiff agrees to dismiss Plaintiff's claims in the lawsuit against Defendant with prejudice by executing an agreed motion and corresponding order of dismissal with prejudice in the lawsuit within ten (10) business days of the execution and delivery hereof.

3.    **Full Force and Effect of the Policy.**

Defendant represents and warrants to Plaintiff and Plaintiff's successors and assigns that Defendant has neither released the Policy, nor taken any other action with respect to the policy, which would prejudice or impair the right of Plaintiff to collect thereunder pursuant to the terms of the assignment herein made by Defendant.

4.    **Counterparts.**

This Agreement can be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument for the same effect as if all parties hereto had signed the same signature page. A facsimile or email copy of any party's signature shall be deemed as legally binding as the original signature.

IN WITNESS WHEREOF, this Agreement is signed and executed on the dates written below and the Effective Date shall be the date of execution by Wesley Howard.

WESLEY HOWARD

Date: 6-20-2016

JJ&P HOTELS, LLC DBA BAYMONT INN

By: _____  Jasdeep Grewal

Its: _Managing Member_

Date: _6/10/16_

STATE OF TEXAS

COUNTY OF DALLAS

I, FELICIA HING, Clerk of the District of Dallas County, Texas, do hereby certify that I have compared this instrument to be a true and correct copy of the original as appears on record in this Office.

GIVEN UNDER MY HAND AND SEAL of said Court, at office in the City of Dallas, _____ A.D. _____

**RELEASE, SETTLEMENT AND CONFIDENTIALITY AGREEMENT – Page 3**

**STATE OF TEXAS**
**COUNTY OF DALLAS**

I, FELICIA PITRE, Clerk of the District of Dallas County, Texas, do hereby certify that I have compared this instrument to be a true and correct copy of the original as appears on record in my office.

GIVEN UNDER MY HAND AND SEAL of said Court, at office in Dallas, Texas, this ___25___ day of __August__ A.D., __2016__.

FELICIA PITRE, DISTRICT CLERK
DALLAS COUNTY, TEXAS

By_____ Deputy